Rcfrin, J.
 

 The Court considers the material points, in this case, to have been determined by previous adjudications of this Court. The plaintiff cannot have any benefit from his executions, as creating a lien at law on the resulting trust in real estate, because, in truth, no lien was created. The executions were issued by a justice of the peace, in a different, county from that in which the land was, and could not be served on it. But had they been in the same county, the plaintiff did not proceed far enough on them to create a lien ;
 
 Presnell
 
 v. Landers, 5 Ire. Eq. 251. If a plaintiff establishes a legal lien on a equity of redemption in land, there is no doubt, that he may come into equity to aid in enforcing it by clearing the estate of the incumbrances, or taking an account of them and ascertaining the amount so as to bring the debt- or’s property fairly into market under the execution, or under the decree; and in such a case, the legal priorities between the execution creditor and other creditors, or assignees, will-
 
 not
 
 be disturbed. This has been held, in several cases, particularly in that of
 
 Presnell
 
 v.
 
 Landers,
 
 and in
 
 Harrison
 
 v.
 
 *237
 

 Battle,
 
 1 Dev. and Bat. Eq. 537. And there is as little doubt,, that a judgment creditor may apply to this Court, in the first instance, for satisfaction out of an equity of redemption in realty, or a resulting trust in the nature of it, as equitable property, having no other legal property subject to the execution. For, originally, equity had that jurisdiction exclusively, and the act of 1812, while it made a
 
 fieri facias
 
 run against such an interest, as land, did, in no degree, oust jurisdiction, and, therefore, according to the general principle, it continues. The principle is exemplified in the ordinary case of relief between sureties, notwithstanding one may have an action at law against another;
 
 Shepherd v. Munroe,2
 
 Law Repos. 624; and is particularly applicable to a case of this kind, in which the remedy is more perfect, and the estate is brought to sale in this Court, more beneficially for all parties, and especially for the debtor, or his assignees. If, therefore, the creditor elects to give up the advantages of the lien of an execution, and seek satisfaction out of an equity of redemption in. land, as equitable property, he may, and it may often be to his advantage to do so, where real and personal property is complicated in the same deed, as one trust fund, which is the case before us. By pursuing that course, however, lie incurs the risk, that the debtor may have disposed of his equitable interest by assignment; for, as there is no lien on such interest by execution, there is nothing to restrain the debtor frortv dealing with it as his own, until it be brought within the ju-. riction of the court of equity, by filing, a bill, and duly prosecuting it. Opon the filing of the bill, and serving the subpoena, a
 
 Us pendens,
 
 is constituted, which, it is settled, arresis. the power of a party to alter the state of the subject of controversy by a sale or conveyance even of the legal estate, and much more is that true of a mere equity. This rule has been sometimes complained of as operating hardly upon purchasers without actual notice of the pendency of the suit. But there is no greater hardship in this case than in that of a purchase over-reached by the lein of an execution of a prior teste, but'not actually sued and delivered-to the" sheriff at the'
 
 *238
 
 time of the purchase. In each case, the purchase is superseded, upon the principle that there is an absol ute necessity for upholding the rights of the plaintiff in the execution, or in the suit in equity in that manner; because otherwise litigation would be interminable and fruitless, and defendants could always defeat recoveries by conveyances and assignments.
 
 Garth
 
 v. Ward, 2 Atk. 147;
 
 Bishop of Winchester
 
 v. Paine, 11. Ves. 194. Indeed, in the latter case, Sir William Grant says that the purchaser is bound by the decree against the person under whom he derives title, and the litigatingparties are not bound to take notice of a title so acquired; for, as to them, it is no title. That rule, being thus established, it is then to be considered, how it affects the parties in this cause. In the first place, it effectually disposes of the second assignment to Stimson ; which was executed five or six weeks after bill was filed and process served on the original defendants, and must therefore be postponed until the plaintiff’s debts are first satisfied. The declaration on that point may, probably, enable the parties to adjust their diffierences without incurring the delay and expense of taking an account or further steps in the cause, since, if there was any surplus worth assigning to Stimson, it must amount to enough to discharge the small demands of the plaintiff, and leave a balance for the operation of that assignment. But, as the Court cannot anticipate, certainly, the determination of the parties on that point, it is necessary, in the next place, to consider how the defendant, Eries, will stand towards the plaintiff. The balance of the purchase money for the negroes bought by Eries, namely, $6000, exceeds the debts to him as the guardian of Miss Shober and the other mentioned in the agreement between McElroyand himself. They are, therefore, to be deducted out of that purchase-money, and considered as retained .by Eries; and only the balance of the $6000 was the debt to McElroy, applicable to the purposes of the assignment of the 22d of September, 1854. That balance, and all the rest of the fund arising from that assignment, is to be applied to the debt to the Life Insurance and Trust Com
 
 *239
 
 pany, which, according to the deed, is to be paid “ first of all.” As to the other debts of McElroy, there is no specific direction in the deed. It recites, in the beginning, that McElroy owed that company the debt mentioned, u and also other debts,” and was desirous to make an assignment to Fries, and also make Fries his general agent and attorney to dispose of and sell all his property, and collect debts due to him, and pay all his debts, and then appoints Fries his attorney to sell, &c., and pay the debt to the company first of all, and “next such debts as said Fries may deem best, and find most convenient,” and then “ in consideration, &c., conveys and assigns to Fries and his heirs all the property, &c., for the purposes aforesaid.” Under those provisions, Fries claims to retain out of the fund, before an application of any part of it to the plaintiff’s demands, debts of several descriptions. One class consists of debts alleged to be owing to himself; and another to himself and others as his copartners. If there be such debts, the Court holds that they are to be paid before those of the plaintiff, because they were known to the parties at the time, and it is to be presumed that, iii the discretion allowed to Fries as to the debts to which the assets should be ap]ffied, he would select those in which he had a personal interest, and that it was expected and intended he should. But-debts to other persons stand on a different footing. As none are specifically mentioned in the deed, the case seems to fall more within that of
 
 Wallwyn
 
 v. Coults, 3 Mer. 707, 3 Sim. 1 (note;) and 2 Russ & Mylne, 451, and the principle deduced from it in England, in subsequent adjudications, than any one which has come before the Court; and the defendant, Fries, more like a mere attorney of the grantor, or a trustee for him, and under his control, than a trustee for creditors constituted by the deed of assignment usually made in this country.
 
 Ingram
 
 v. Kirkpatrick, 6 Ired. 462. But that question concerns the defendants, between themselves, claiming the one under an assignment for all creditors generally, as he might choose to pay them, and the other, under an assignment of the residue of the fund for the benefit of numerous specified creditors.
 
 *240
 
 Between them the Court has already passed, in
 
 Stimson
 
 v. Fries, 2 Jones’ Eq., 157. Tire plaintiff’ has no concern with it. For, in either aspect, the fund was an equitable interest, belonging to McElroy, which the plaintiffs had a right to pursue in equity, and which, after the service of the subpoena, the trustee, Fries, could not apply so as to defeat the plaintiff. For, it is to be observed, that the bill does not seek satisfaction upon the footing of a trust for the plaintiffs, as one of the creditors secured in the deed, but upon his being a judgment creditor, pursuing a resulting trust vested in his debtor. In that view of the case, the Court is of opinion, that a general declaration of trust in favor of such creditors as the debtor, or his attorney, or his trustee may choose, or think best, and most convenient to pay, contained in a conveyance of all the debtor’s property, is not such an appropriation of the estate as can be upheld to the prejudice of a creditor who prosecutes his demand to judgment, and files his bill for satisfaction. It is not like a positive security for all creditors, but reserves a power over the estate in the debtor, or, which is the same thing, in his attorney, incompatible with the rights of the creditors, by means of which the debtor may compel them, respectively, to make terms with him, greatly to his benefit, and to their prejudice. It may be doubted, therefore, whether any of the “ other debts” not named ought to stand before the the plaintiff’s. But, at present, that point need not be determined conclusively, as its necessity cannot directly arise until, upon an inquiry, it shall appear what debts were paid by Fries before the bill filed or at least assumed by him, so as conclusively to bind him, personally, for item. The answer does not give any definite information on that head, but only sets out a schedule of payments or assumpsits up to the 1st of March, 1855, which includes a period of more than three months after this suit was brought, when the hands of both McElroy and himself were tied from further dispositions or incumbrances of the fund to the prejudice of the plaintiff. If, therefore, the defendants think proper to go into an account of the debts satisfied or assumed by Fries, payable
 
 *241
 
 out of this fund, the master must distinguish such as accrued before this suit from those that were subsequent, so as to present the point with precision, that the Court may see that the 'decision will be on the rights of the parties, and not oh abstract questions. In the mean time, while the Court declares that the plaintiff has a right to satisfaction preferably to Stimson, and has also a right to an account from Fries, and, in taking the account, the master will ascertain the sum due to the plaintiff for principal, interest, and costs, at law, on the footing of his j udgments and for his costs in this cause, and also state the account of the fund in the hands of Fries, upon the principles now laid down.
 

 Pee Cueiam, Decree accordingly, ■